## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

**WESTFIELD INSURANCE CO.**                                                     **PLAINTIFF**

v.                                                                         No. 3:20-cv-639-BJB

**KENTUCKIANA COMMERCIAL CONCRETE, LLC, AND DOSTER COMMERCIAL CONSTRUCTION, INC.**               **DEFENDANTS**

### MEMORANDUM OPINION

This insurance litigation arises from an arbitration claim that HRB, the owner of a Louisville apartment complex, filed against its general contractor, Doster Commercial Construction. HRB is seeking damages from Doster for allegedly faulty concrete work in the construction of the apartments.

Doster added its concrete subcontractor—Kentuckiana Commercial Concrete, LLC—and 16 other subcontractors to the arbitration as potentially liable parties. Complaint (DN 1) ¶ 16. In response, Kentuckiana invoked its insurance coverage: a commercial general liability, or CGL, policy issued by Westfield Insurance Co. ¶ 17. The Westfield policy guaranteed Kentuckiana a defense and indemnification for claims of "property damage" caused by an "occurrence." ¶ 21.

After Kentuckiana called on Westfield to defend it in the arbitration proceedings under the CGL policy, Westfield did so. Doster also asked Westfield to defend it. It was *not* a Westfield policyholder, but sought coverage and a defense as an "additional insured" under Kentuckiana's policy. ¶14.[1] Westfield declined to defend Doster. Doster Response (DN 24) at 2. Then Westfield sued both Kentuckiana and Doster in federal court, seeking a declaration that it has no duty to defend either. Complaint at 1. Contending the facts are not meaningfully in dispute, Westfield moved for judgment on the pleadings. DN 19.[2]

---

[1] The insurance policy doesn't define "additional insured," and neither do the parties' filings. The parties don't appear to dispute whether the term covers a general contractor like Doster, but focus instead on whether the concrete issues amount to an "occurrence." For what it's worth, BLACK'S defines "additional insured" as "[s]omeone who is covered by an insurance policy but who is not the primary insured." *Insured*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[2] Kentuckiana previously moved to dismiss on justiciability grounds, DN 9, which the Court rejected during a hearing, DN 16.

1

\*

"In Kentucky, whether a provision of an insurance policy requires the insurer to defend its insured is an issue of law for the Court to determine." *State Farm Fire and Cas. Co. v. Compliance Advantage, LLC*, 471 F. Supp. 3d 796, 801 (E.D. Ky. 2020) (citing *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002)). An insurance company "has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy." *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). As the Sixth Circuit recently reiterated, citing precedent involving another Westfield CGL coverage dispute, "Kentucky courts determine whether the insurer has a duty to defend its insured at the outset of litigation 'by comparing the allegations in the underlying complaint with the terms of the insurance policy.'" *Blankenship v. Shelter Mut. Ins. Co.*, No. 23-5247, 2023 WL 6799581, at \*2 (6th Cir. Oct. 16, 2023) (quoting *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003)). "The insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action." *James Graham Brown*, 814 S.W.2d at 279.

The allegations at issue here concern water damage HRB ascribes to faulty workmanship by Doster and Kentuckiana. Complaint, Exhibit A (DN 1-1) at 7–8 (attaching summary of engineer's report describing breezeway leaks, damaged units, water in the building frame, and the like).[3] Asserting claims for negligence and breach of contract, HRB accused Doster of failing to complete the project with "skill, care and diligence," breaking its "promise to perform the work according to the Contract Documents," breaching "its warranty of defect-free Work," breaking "its promise to supervise and to coordinate the Work using its 'best skill and attention,'" and breaking "its promise to be responsible for the acts, omissions and qualifications of its supervisors and Subcontractors in performing the Work." *Id.* (arbitration demand) at 86. The engineer's report enclosed with HRB's initial arbitration demand concluded that damage occurred where Doster's work "did not conform to the Construction Documents, local ordinances and industry standard, was not workmanlike, and was negligent." *Id.* at 83. Doster's arbitration demand against Kentuckiana, moreover, incorporates all the allegations from HRB's original arbitration demand and ascribes them to Kentuckiana. Complaint, Exhibit B (DN 1-2) at 135–38.

\* \*

The motion for judgment on the pleadings contends that the sort of faulty construction HRB says it suffered at the hands of Doster, and by extension

---

[3] Exhibit A to the Complaint (DN 1-1) contains HRB's arbitration demand against Doster, correspondence with Doster, and attachments such as the engineer's report. Exhibit B (DN 1-2) repeats Exhibit A and also includes Doster's own arbitration demand against Kentuckiana.

2

Kentuckiana, falls outside the meaning of "occurrence" as that term has been used in CGL policies and interpreted by Kentucky courts. The policy at issue defined occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Complaint ¶ 23. Kentucky courts and the Sixth Circuit have recognized that the terms accident and occurrence, as used in similar CGL policies, are not ambiguous and take their ordinary meaning. *See, e.g.*, *Tech Dry*, 336 F.3d at 507; *Am. Mining Ins. Co. v. Peters Farms, LLC*, 557 S.W.3d 293, 296 (Ky. 2018).

When defining an occurrence under similar CGL policies, Kentucky courts have asked whether the alleged actions were fortuitous. "Occurrence" is defined by the Kentuckiana policy (as in other CGL policies) as an "accident." Complaint ¶ 23. And "[i]nherent in the plain meaning of 'accident,'" the Kentucky Supreme Court has held, "is the doctrine of fortuity," which requires courts to analyze the insured's intent and control. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 74 (Ky. 2010); *see also Tech Dry*, 336 F.3d at 507 (interpreting accident and occurrence in tandem). Fortuity requires courts to assess two disjunctive factors: intent and control. *Cincinnati Ins.*, 306 S.W.3d at 74. "If the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured, then CGL coverage covering *accidents* will apply to the benefit of the insured." *Martin/Elias Props., LLC v. Acuity*, 544 S.W.3d 639, 643 (Ky. 2018) (emphasis in original).

Courts applying Kentucky law have held that faulty construction-related workmanship, standing alone, is not a fortuitous "occurrence" under CGL policies including language similar to that at issue here. In *Cincinnati Insurance*, for example, a homeowner sued a contractor for allegedly defective construction of a home. 306 S.W.3d at 71. The Kentucky Supreme Court deemed the contractor's alleged work not fortuitous—which meant the insurance policy didn't cover it as an accidental occurrence. *Id.* at 76. Although the contractor didn't intend to produce substandard work (the first "intent" aspect of the fortuity doctrine), it "had control over" the work alleged to be faulty (the second aspect). *Id.* The Court spoke clearly to the unlikelihood that poor construction would amount to an accident or occurrence: "the definition of 'accident' required to establish an 'occurrence' ... cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction." *Id.* at 75 n.19.

Eight years later, in *Martin/Elias Properties*, the Kentucky Supreme Court reaffirmed *Cincinnati Insurance* and underscored the limit it announced on the scope of an "occurrence" in the context of a faulty-workmanship claim. 544 S.W.3d at 640–41. After a home-renovation company hired a contractor to expand the basement of a historic home, a foundation excavation caused significant structural damage that required extensive repairs. The renovation company demanded payment from the contractor and his insurer, who both refused. *Id.* at 641. So the renovation company

sued the contractor for negligence and breach, and sued the insurer for bad-faith failure to provide coverage. *Id.* The Supreme Court held that the allegedly faulty work didn't constitute an occurrence under the CGL policy because the contractor "had both intent and full control when conducting his work, which ultimately failed to support the existing structure." *Id.* at 644. The question is not "whether the damage done is the type of damage that would be expected by the contractor," the court explained, "but rather whether the damage resulted from the actions purposefully taken by the contractor or those working under the contractor's control." *Id.*

\* \* \*

The allegations leveled against Doster and Kentuckiana are consistent with those at issue in these "workmanship" precedents, which consistently hold that such allegations do not constitute accidents or occurrences. HRB doesn't allege that Doster and Kentuckiana *meant* to build a shoddy apartment building, so the intent element isn't at issue here. But as in other construction disputes, the alleged errors concern aspects of the project over which the general contractor and subcontractor exercised control over the work. HRB's allegations against Doster, for example, accuse Doster of failing to complete the project with "skill, care, and diligence." Complaint, Exhibit A at 86; *accord Cincinnati Ins.*, 306 S.W.3d at 71 (contractor's construction work was "so poor" that the home was beyond repair); *Martin/Elias*, 544 S.W.3d at 640–41 (contractor failed to take adequate steps to prevent damage to the home while excavating around the foundations). HRB also alleged that Doster breached "its warranty of defect-free Work," and broke "its promise to supervise and to coordinate the Work using its 'best skill and attention.'" Complaint, Exhibit A at 86; *accord Cincinnati Ins.*, 306 S.W.3d at 76 (contractor had control of construction project, either directly or through subcontractors).

The faulty work that HRB has accused Doster (and by extension Kentuckiana) of providing—and the subcontractors' adherence to the terms of their contract—was undoubtedly within the Defendants' "control" as the term is used in the Kentucky caselaw. The general contractor decided how to complete the concrete work—by subcontracting with a concrete vendor of its choosing. The quality of their supervision and workmanship—the issues challenged in the underlying arbitration—were controlled by Doster and Kentuckiana, not any third party. Westfield Reply to Doster (DN 26) at 3. The gist of the claims against Doster, which Doster purports to pin on Kentuckiana, is that the contractors failed to ensure quality workmanship and compliance with the terms of the construction contract. *See, e.g.*, Westfield Brief (DN 19-1) at 2-3. In these circumstances, courts have repeatedly followed the Kentucky Supreme Court's ruling in *Cincinnati Insurance* to hold that allegations of flawed construction typically do not fall within the scope of CGL policies.[4]

---

[4] *See, e.g.*, *McBride v. Acuity*, 510 F. App'x 451, 454 (6th Cir. 2013) (contractor with control over home construction couldn't treat structural defects as "accidents"); *State Auto Property*

4

In short, Kentucky law is clear that "faulty workmanship" does not ordinarily "constitut[e] an occurrence under a CGL policy" because the "ultimate liability falls to the one who performed the *negligent work* … instead of the insurance carrier." *Cincinnati Ins.*, 306 S.W.3d at 75 (emphasis added). The allegations brought by HRB do not implicate events that were beyond the control of either Doster or Kentuckiana. So neither the breach nor the faulty-workmanship allegations leveled against Doster and Kentuckiana constitute a fortuitous event amounting to an "occurrence" covered by the Westfield insurance policy. To hold otherwise would essentially convert Kentuckiana's CGL coverage into a construction bond. *See Cincinnati Ins.*, 306 S.W.3d at 74–75.

\* \* \* \*

The contrary arguments offered by Kentuckiana and Doster are unavailing. The Defendants argue that HRB's arbitration claims allege an occurrence because responsibility for these losses might lie with the project architects or engineers, none of whom (they say) were within their control. *See* Doster & Kentuckiana Responses (DNs 23, 24). Doster and Kentuckiana cite a decade-old, unpublished, federal district-court opinion to argue that damage attributed to design flaws may constitute a covered occurrence. DNs 23, 24 (citing *Westfield Ins. Co. v. B.H. Green & Sons, Inc.*, No. 5:11-cv-10, 2013 WL 5278243 (W.D. Ky. Sept. 18, 2013)). To the extent that *B.H. Green* is persuasive and consistent with controlling Kentucky law, that decision is readily distinguishable on its facts. The lawsuit involved defective concrete that appeared fine when poured but began to crack after it cured. 2013 WL 5278243, at \*4. The opinion distinguished *Cincinnati Insurance* on the ground that the allegations against B.H. Green "involve[d] no faulty performance that Green might have observed or controlled," whereas the alleged problems in *Cincinnati Insurance* were "both observable and controllable by the insured party throughout the construction." *Id.* Because the latent defect in the concrete was purportedly outside B.H. Green's control, the subsequent failure of the concrete amounted to a fortuitous occurrence covered by Westfield's policy. *Id.* Faulty workmanship was "not at issue," and the concrete subcontractor had indisputably fulfilled all contractual requirements in carrying out its assigned work. *Id.* at \*3–4. Even if the contractor successfully carried out everything it was hired to do or control, the alleged harm still would've befallen the plaintiff—so according to the district judge the damage truly was a distinct and fortuitous occurrence. *Id.*

---

*and Cas. Ins. Co. v. Bragg*, No. 1:13-cv-100, 2014 WL 801514, at \*3 (W.D. Ky. Feb. 28, 2014) (contractor's negligent construction of home and installation of home septic system did not constitute an occurrence for purposes of CGL coverage); *cf. Blankenship*, 2023 WL 6799581 at \*4 (declining to find an "occurrence" based on defendant's supervision and control of employee, and analogizing to "the insurer in *Martin/Elias*," who "had no duty to defend the contractor accused of negligent construction because he had control over the construction process….").

5

Not so here. The accusations against Doster and Kentuckiana, which dictate Westfield's duty to defend at this stage, *see James Graham Brown*, 814 S.W.2d at 279, provide no basis to conclude HRB is pursuing them for actions that happened to them, rather than because of them. The arbitration demand at issue includes no allegations against the engineers or architects whose plans dictated the Defendants' work. Instead it accuses the general contractor of faulty workmanship:

- "Doster slit and did not repai[r] [waterproofing] membrane flashings and the weather barrier …."
- "Doster failed to install the window trim or the Z-flashing specified on the construction drawings …."
- "Doster installed the sheet metal flashings with a back-pitch toward the building, redirecting water running down the outside surface of the exterior cladding into the base of the wall …."

Complaint, Exhibit A at 84. HRB has not alleged that the building failed despite Defendants' adherence to the construction plans, as was the case in *B.H. Green*.[5] To the contrary, HRB alleges that Doster *deviated* from the design documents and failed to install waterproofing measures that were clearly part of the plans. *See, e.g.*, Complaint, Exhibit A at 85. The accusations here involve "protracted improper construction" and "defective workmanship" that took place "over a period of weeks" or months and therefore parallel the situation in *Cincinnati Insurance*, a fact pattern *B.H. Green* expressly distinguished from the "sudden and unexpected" concrete failure in that case. 2013 WL 5278243, at *4–5. So *Cincinnati Insurance* controls, and Westfield is not obligated to defend either Kentuckiana or Doster.

To be sure, if the Defendants are right that the architects or engineers contributed to or caused the defects in HRB's buildings, the conclusion that their work isn't covered by Kentuckiana's CGL policy wouldn't preclude Doster and Kentuckiana from recovering.[6] And Doster's belief that architects and engineers share blame doesn't transform HRB's claims of faulty workmanship into an accidental occurrence that Westfield must defend against.

Kentuckiana also urges the Court to read the policy in its favor based on Kentucky caselaw instructing courts to read coverage exclusions strictly and policy coverage generously. Kentuckiana Response (DN 23) at 6 (citing *State Farm*, 471 F. Supp. 3d at 801). True, under Kentucky insurance law all doubts resolve in favor of the insured. *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870

---

[5] *See B.H. Green*, 2013 WL 5278243, at *4 ("[T]he concrete that Green supplied satisfied the specifications of the LCBOE's architect and all relevant inspectors.").

[6] *See generally D.W. Wilburn, Inc. v. K. Norman Berry Assocs.*, No. 2015-CA-1254, 2016 WL 7405774, at *5 (Ky. Ct. App. Dec. 22, 2016) (architects may be held liable for supplying faulty design plans and specifications); *Brasfield & Gorrie LLC v. Harrod Concrete and Stone Co.*, No. 3:18-cv-66, 2020 WL 3086601, at *2 (E.D. Ky. June 10, 2020) (similar).

S.W.2d 223, 227 (Ky. 1994). But the question before the Court is one of coverage of "occurrences," not any exclusions of coverage for a subset of occurrences.[7] "[I]f the insuring clause does not extend coverage, one need look no further." *Cincinnati Ins.*, 306 S.W.3d at 78 n.35. Here, as coverage does not extend to HRB's claims, no exclusions apply and the interpretive canon favoring the policyholder isn't implicated. To the extent Defendants urge the Court to read the policy in their favor generally, they have identified no ambiguous terms in need of such construction. The Sixth Circuit has squarely held that the terms accident and occurrence, in Westfield policies, are not ambiguous. *See Tech Dry, Inc.*, 336 F.3d at 507–08.

\* \* \* \* \*

This written opinion follows an oral hearing during which the Court heard arguments and ruled orally on Westfield's motion for judgment on the pleadings. Given the complexity of the issues and pleadings, the Court told the parties that a thorough written opinion would follow, but that the Court saw no reason not to indicate its ruling at that time. *See* DN 37 at 20 (official transcript). Mindful that lengthy gaps between oral rulings and written opinions have occasionally created difficulties for parties, *see generally Stidhum v. 161-10 Hillside Auto Ave, LLC*, No. 21-1653-cv, 2022 WL 1087144, at *2 n.1 (2d Cir. Apr. 22, 2022) (collecting cases), the Court specifically invited the lawyers to inform it if a short delay or any "real-world event" made that approach problematic. Every party agreed that this course made sense. The Court reiterated in a text order that "[w]ith counsel's agreement, the Court will soon file a written opinion more fully and formally explaining its decision." DN 29.

Kentuckiana and Doster, however, each filed notices of appeal. DNs 30, 32. They did so shortly after the Sixth Circuit issued its most recent opinion cited in the analysis above: *Blankenship v. Shelter Mut. Ins. Co.*, No. 23-5247, 2023 WL 6799581, at *2 (6th Cir. Oct. 16, 2023). Within the 21-day period for responding to motions, *see* L.R. Civ. P. 7.1(c), Westfield objected to the Defendants' filings, noting that they were premature: this Court had not yet issued a final judgment (or the promised written opinion), so the orders Defendants challenged remained non-final. *See* DN 35 (citing *Reid v. White Motor Corp.*, 886 F.2d 1462, 1467 (6th Cir. 1989)). Westfield is right that no final judgment existed from which to appeal, *see* FED. R. CIV. P. 58(a); FED. R. APP. P. 4(a), so the Defendants' notices of appeal were premature. The Court reminds counsel, moreover, that the instances of procedural confusion that hasty trial judges inevitably cause are typically best addressed to the district court before a notice

---

[7] The Westfield policy does include exclusions j.(6) to the CGL coverage and m.(1) to the umbrella coverage, both of which address "[p]roperty damage" to "property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Complaint, Exhibit C (DN 1-3) at 103. The parties' briefing, however, doesn't address these exclusions, so neither does this opinion.

7

appeal purportedly vests jurisdiction in another court less familiar with a case's procedural history.

In any event, now that this opinion has issued, the Court will enter a separate and appealable final judgment in Westfield's favor.

Benjamin Beaton, District Judge
United States District Court

December 14, 2023

8